Laramorb, Judge,
delivered the opinion of the court:
The plaintiff sues to recover income taxes for the year 1947 in the amount of $23,571.34, with interest. The plaintiff kept his boobs and filed his returns on the cash receipts and disbursements basis and used the calendar, year as his annual accounting period. The plaintiff contends that he overpaid his income taxes for 1947 because he failed to take a deduction for interest paid during that year. A timely claim for refund was filed, rejected, and this suit followed.
The facts are not in dispute and may be summarized as follows: The plaintiff owned or controlled several corporations known collectively as the Longchamps Chain of restaurants^ In August of 1946 plaintiff was assessed $1,931,435.37, and the corporations were assessed $6,461,563.50 for deficiencies in Federal tax for the taxable years 1940 through 1944, plus penalties and interest. The taxpayers disputed the amount of these liabilities and negotiations were entered into by representatives of the taxpayers and the Commissioner of Internal Nevenue which culminated in a closing agreement dated September 27, 1946. This 1946 closing agreement specified that the correct amount of the deficiencies in tax and penalties for the taxable years 1940 through 1944 was $808,326.77 with respect to plaintiff, and $4,958,-894.18 with respect to the corporations. This closing agreement provided that plaintiff and the corporate taxpayers were jointly and severally liable for all the taxes.
A substantial portion of the corporations’ tax liabilities had been paid prior to the 1946 closing agreement, and both plaintiff and the corporations made installment payments *353 on their liabilities from time to time in conformance with the terms of that agreement.
In April 1947 the Commissioner assessed against plaintiff an income tax deficiency for 1945 in the amount of $41,494.31, with interest thereon in the amount of $2,694.29, or a total of $44,188.60. Deficiencies and interest thereon were also assessed against the corporations for the year 1945 in the total amount of $154,123.91.
In February 1947 the Longchamps restaurants lost their liquor licenses. As a result of the loss of the licenses, it was anticipated that the income from the business would lessen materially and that the business might operate at a loss. The plaintiff was trying to find a buyer for the Longchamps Chain, and to facilitate a sale it was proposed to the Commissioner that another closing agreement be entered into by which a payment could be made in complete satisfaction of all outstanding liabilities of the taxpayers.
By an agreement of sale, dated June 30, 1947, between plaintiff and the Fornow Corporation, as amended by an agreement dated July 7, 1947, plaintiff sold to the Fornow Corporation the total issued and outstanding stock of Henry Lustig Co., Inc. Henry Lustig Co., Inc. owned all the stock of Restaurant & Patisseries Longchamps Inc., which owned all the stock of the other corporate taxpayers.
On August 7, 1947, the Commissioner entered into a closing agreement with the Fornow Corporation and plaintiff and his corporations under which the Government agreed to close all the liabilities for income, declared value excess profits, excess profits taxes, and personal holding company surtaxes, together with penalties and interest, of all the corporation taxpayers for all periods prior to July 1, 1947, and for plaintiff individually for all periods prior to January 1, 1947, for the payment to it of $3,000,000 in cash and the delivery of four notes of the Fornow Corporation in the amount of $50,000 each, which notes were to mature annually, the first to mature in July of 1948.
The $3,000,000 in cash was to be paid, and the $200,000 in notes was to be delivered, to the Government by the Fornow Corporation for and on behalf of plaintiff and the corporate taxpayers, pursuant to the agreement of sale be *354 tween plaintiff and Fomow Corporation. This 1947 closing agreement did not specify how the payments to be made under it were to be allocated as among the accounts of the various taxpayers.
The $3,000,000 in cash was paid in 1947, one $50,000 note was paid in 1948, and the balance of the notes ($150,000) were paid in 1949.
When the 1947 closing agreement was entered into the plaintiff’s total individual tax liability, aside from his joint and several liability for the corporate taxpayers’ taxes, was $838,317.14. This sum included both assessed and unas-sessed taxes, penalties, and interest. Of this sum, $770,780.88 represented taxes and penalties, and $67,537.26 represented interest. The total amount of the taxes, penalties, and interest owed by plaintiff and the corporate taxpayers at the time the 1947 closing agreement was entered into, excluding consideration of the taxable year 1947, was $3,492,984.93. These sums were determined for plaintiff by an agent of the Internal Revenue Service, and defendant does not except to them.
It was anticipated by all concerned that the corporate taxpayers would operate at a substantial loss after losing their liquor licenses in February of 1947. The taxpayers’ representative, in the negotiations resulting in the 1947 closing agreement, believed that these operating losses would be sufficient to offset all liability for taxes, penalties, and interest owed by the corporations except for those owed under the 1946 closing agreement, and that no moire than $3,000,000 would be due from all the taxpayers for the period covered by the 1947 closing agreement after the expected operating losses of the corporations were taken into account. This view was communicated to the Internal Revenue Bureau and the prospect of the operating losses by the corporate taxpayers, because of the loss of their liquor licenses, was taken into account by the parties in reaching the 1947 closing agreement. A tentative agreement was reached fixing the total amount to be paid by plaintiff and the corporate taxpayers at $3,000,000. This sum was subsequently increased to $3,200,000.
*355 The plaintiff contends that $67,537.26 of the amount paid under the 1947 closing agreement was paid as interest and is therefore deductible under section 23 (b)[1] of the Internal Revenue Code of 1939, as amended (26 U. S. C. § 23). The plaintiff argues that the total amount paid under the 1947 closing agreement represented the total correct liability of plaintiff and the corporate taxpayers and that there was not a compromise settlement whereby a lump-sum payment of part of the total liability was accepted in satisfaction of the whole. The plaintiff also argues, however, that if there was a compromise, the compromise related only to the corporate taxpayers and that plaintiff’s individual taxes, penalties, and interest were paid in full.
The defendant contends that the 1947 closing agreement was a compromise of plaintiff’s and the corporate taxpayers’ liabilities; further, that no allocation of the amount paid by all the taxpayers can be made and therefore no interest deduction should be allowed.
In connection with plaintiff’s contention that there was no compromise, defendant points out that the correct liability of the corporate taxpayers could not be determined at the time of the 1947 closing agreement because the effect of the anticipated operating losses of the corporate taxpayer was unknown. A lesser sum than the known liabilities was accepted by the Government, and we believe that there was clearly a compromise of the corporate taxpayers’ liabilities.
The defendant contends that if the 1947 closing agreement was a compromise, the lump-sum payment made after that agreement was not a payment of income taxes, penalties, and interest, but was a payment in lieu of such liability, and no part of the payment is deductible as interest. The defendant relies on I. T. 3852, 1947-1 C. B. 15, which so states.
If I. T. 3852 was intended to deny a deduction for interest in all cases where a lump-sum payment is made in compromise, regardless of whether the amount of interest included *356 in the lump-sum payment can be ascertained, we disagree with it. See Max Thomas Davis, et al. v. Commissioner, 46 B. T. A. 663, where a deduction was allowed for the amount of interest set forth in the compromise agreement. If the- amount of interest is ascertainable from the agreement or the circumstances surrounding the agreement, we see no reason for denying a deduction for the interest. However, if the amount of interest paid is not clearly ascertainable, and the lump-sum payment is less than the asserted or correct (depending on the type of compromise) principal amount due, no deduction for interest can be allowed because the interest has lost its identity and the taxpayer is unable to prove that he paid any interest, not because the lump-sum payment was made in lieu of taxes, penalties, and interest. Cf. William Justin Petit, et al. v. Commissioner, 8 T. C. 228; Automatic Sprinkler Co. of America v. Commissioner, 27 B. T. A. 160.
In the instant case, the amount of interest that plaintiff paid on his individual tax liabilities is ascertainable. The compromise related to the corporate taxpayers. The record affords no basis for a conclusion other than that the plaintiff paid the full amount of his individual taxes, penalties, and interest. The plaintiff, having paid the full amount of his individual liability, $838,317.14, is entitled to deduct the interest included in that payment, $67,537.26, in the year of payment.
There remains for consideration the effect of the four $50,000 notes of the Fornow Corporation, which were not paid until 1948 and 1949, in relation to the question of the year of payment. In 1947 the Government received as payment of the plaintiff’s and the corporate taxpayers’ taxes, penalties, and interest, $3,000,000 in cash, and $200,000 in notes, which were not paid in 1947. The question arises as to which year the interest in the amount of $67,537.26 was paid. For purposes of determining year of payment, we deem this situation appropriate for the application of the fundamental rule that partial payments shall first be credited to interest and then to principal, unless otherwise specified; Thus applied, the $67,537.26 of ascertainable interest was paid in 1947 when the $3,000,000 cash payment was made.
*357 The plaintiff is entitled to recover with interest as provided by law, and judgment will be entered accordingly.
: The determination of the amount of recovery shall await the filing of a stipulation by the parties showing the amount due in accordance with the findings and opinion of the court.
It is so ordered.
:i MaddeN, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
FINDINGS OE FACT
The court, having considered the evidence, the report of Commissioner Roald A. Hogenson, and the briefs and argument of counsel, makes findings of fact as follows:
1. Henry Lustig is an individual who at all times material to this action kept his records, filed his income tax returns, and paid the taxes shown due thereon on a cash receipts and disbursements basis using the calendar year as the annual accounting period.
2. In the year 1945 agents of the then Bureau of Internal Revenue in New York City were assigned to an examination of the income tax returns of said Henry Lustig and of various corporations owned or controlled directly or indirectly by him. These various corporations were known collectively as the Longchamps Chain of restaurants and the top holding company in the chain was Henry Lustig Co., Inc., which owned and controlled directly or indirectly all of the stock of . the various restaurant corporations and three real estate corporations.
. 3.-The audit of the income tax returns of Henry Lustig individually for the years 1940 through 1944 disclosed deficiencies in Henry Lustig’s income tax for that period. An audit of the tax returns of the various corporations for the same period disclosed deficiencies in the income, declared value excess profits, excess profits taxes, and personal holding company surtaxes of those corporations for that period.
4. The report prepared by the internal revenue agent proposed deficiencies in tax, penalty, and interest against Henry Lustig for the years 1940 through 1944 in the total amount of $1,931,435.37 as follows:

*358

5. On tbe August -1946, special No. 1 list jeopardy assessments in the above amounts were made by the Commissioner of Internal Eevenue against Henry Lustig for the years indicated above. On the same list assessments were made of the deficiencies in tax, penalty, and interest against the various Lustig corporations in the total amount of $6,461,563.50.
6. Late in August 1946 Mr. Philip Zimet, an attorney, was retained by Mr. Lustig and the various corporations to contest the validity of the claims of the Government for taxes owing. Mr. Zimet, probably the day after he was retained, participated in discussions with representatives of the then Bureau of Internal Eevenue to try and work out a procedure so that the restaurants could continue to operate the way they had previously been operating without substantial interference by the Federal Government.
7. As a result, on August 29, 1946, an agreement executed by Henry Lustig for himself and various of his corporations and by the Commissioner of Internal Eevenue was entered into. Under this agreement, hereinafter referred to as the “escrow agreement,” Lustig delivered to the Commissioner of Internal Eevenue to be held by said Commissioner in escrow all of the certificates for the capital stock of the various corporations owned by Lustig or any of his associated companies, all as more particularly described in an exhibit attached to the escrow agreement. Attached as exhibit B to the escrow agreement was a schedule showing the amounts which had been assessed as tax and penalty against Henry Lustig and the various associated corporations for the periods 1940 through 1944. The amounts shown on that schedule as having been assessed against Henry Lustig for tax and penalty deficiencies for the years 1940, 1941, 1943, and 1944 were identical with the amounts shown above in finding 4 and with the deficiencies assessed by jeopardy assessment against Henry Lustig, referred to in finding 5 above.
*359 8. After conferences between representatives of Henry Lus-tig and the various corporations and the Internal Eevenue Agent in Charge, Second District of New York, a tentative agreement was reached as to the amount of the deficiencies in tax and penalties attributable to each of the taxpayers for the years 1940 through 1944. No interest was included in the amount agreed upon and all the taxpayers were to remain liable for interest. Provision was made for payment of the deficiencies with interest on an installment basis as is more fully set forth in the agreement. All the taxpayers were to be jointly and severally liable for such payments. This tentative agreement was submitted by the taxpayers to the Commissioner of Internal Eevenue in a letter dated September 27,1946, as follows:
The undersigned taxpayers (hereinafter collectively referred to as the proponents), in conferences with the Internal Eevenue Agent in Charge, Second District of New York, have arrived at an agreement with that office on their respective correct deficiencies in taxes and penalties for the years and in the amounts shown on Exhibit A hereto attached. The said conferences resulted from certain jeopardy assessments made against the proponents as more particularly referred to m the Escrow Agreement, entered into between certain of the proponents and the Commissioner of Internal Eevenue on August 29,1946, a copy of which agreement is hereto attached as Exhibit B. If said deficiencies so agreed upon are approved by the Treasury Department, the said determinations shall be considered final by the proponents and will not be contested in the Tax Court of the United States, in any court, or in any other manner.
The proponents represent that they are unable immediately to pay said deficiencies in full, including interest, and therefore an extension of time is requested in which the said deficiencies with interest may be paid, upon an installment basis, as follows:
$1,000,000 on or before November 1,1946, and
$75,000 on or before the first day of the succeeding calendar month and on or before the first day of each succeeding calendar month until the entire amount of said deficiencies plus interest thereon as provided by law shall have been fully paid, to the Collector of Internal Eevenue for the Second District of New York.
The proponents may prepay said deficiencies with interest at any time, or from time to time, in whole or *360 in part. However, any prepayment which, together with payments theretofore made, does not extinguish the entire deficiencies and interest, will not relieve the proponents from making the aforesaid $75,000 monthly payments.
If the Treasury Department approves the foregoing method of installment payment, the proponents will agree that the liability to pay said deficiencies and interest shall be a joint and several liability.
In the event that any of said installments is not paid as the same becomes due and payable, the entire amount of said deficiencies and interest then remaining unpaid shall immediately become due and payable and the collection of the unpaid amount so due and owing may be enforced by all legal means available.
If the proposal herein contained is acceptable to the Treasury Department, the proponents will within sixty days of such approval execute their personal bonds on the basis of a joint and several liability to pay the United States the amount of said deficiencies, plus interest, and hereby agree that the aforesaid Escrow Agreement, Exhibit B, to the extent not inconsistent with this proposal, may be continued in force and effect until said deficiencies and interest shall have been fully paid. It is also understood and agreed that the Government’s liens of record shall remain intact until the liabilities involved are fully satisfied.
The proponents also agree that if they, or any of them, are now entitled to or shall become entitled to any refund of any Internal Revenue taxes for any year or years, or period or periods, before the said deficiencies with interest are fully satisfied, any such refunds shall be applied against the then unpaid balance.
If this proposal is accepted, the proponents hereby agree to deliver to the Collector of Internal Revenue for the Second District of New York, written agreements to the suspension of the running of the statutory periods of limitations on assessment or collection for the period during which any installment remains unpaid and for one year thereafter.
It is understood that this proposal does not afford relief from any civil liabilities unless and until it is approved by the Secretary of the Treasury, or the Under Secretary of the Treasury, or an Assistant Secretary of the Treasury.
It is further understood that this proposal is entirely separate and apart from and does not embrace in any way any settlement or compromise whatsoever of any *361 criminal liabilities for violation of the Internal Eevenue laws.
Simultaneously with the payment in full to the Collector of Internal Eevenue for the Second District of New York of said deficiencies and interest, the Collector shall issue and deliver to the proponents certificates of discharge, pursuant to section 3673 (a) of the Internal Eevenue Code, discharging all of the properties and rights to property held or owned by said proponents from all existing Federal tax liens for Internal Eevenue taxes for the periods here involved.
If this proposal is accepted by the Commissioner of Internal Eevenue and approved by the Secretary of the Treasury, the Under Secretary of the Treasury, or an Assistant Secretary of the Treasury, it shall be considered a closing agreement within the meaning of section 3760 of the Internal Eevenue Code.
Attached to the letter as exhibit A was a schedule of agreed deficiencies in tax and penalties for each of the taxpayers for the years in question.
The foregoing letter was forwarded to the Secretary of the Treasury by the Acting Commissioner of Internal Eev-enue with a memorandum dated September 30, 1946, a copy of which is as follows:
In re: Henry Lustig, et al.
I hand you herewith a letter from the above-named taxpayers dated September 27,1946, which will explain itself. The substance of the matter is that the taxpayers and the Internal Eevenue Agent in Charge have agreed upon the correct tax liabilities of the taxpayers for the years in controversy and the taxpayers now propose that these liabilities be finally determined under the closing agreement provision of the Internal Eevenue Code, section 3760. They also request an extension of time within which to pay the taxes, penalties, and interest on an installment basis, set out with particularity in the letter. This disposition of the civil liabilities has no relation to to the criminal aspects of the case. I recommend that the proposals contained in the letter be approved.
(Signed) W. T. Sherwood,

Acting Commissioner.

Approved September 30, 1946.
(Signed) O. Max Gardner,

Under Secretary of the Treaswry.

*362 By letter dated October 2, 1946, a copy of which is set forth below, the Commissioner of Internal Revenue advised the taxpayers’ representative that the proposed agreement had been accepted:
You are advised that acceptance of the proposal dated September 27, 1946, of Henry Lustig and his corporations to pay the taxes and penalties, with interest, therein described has been approved by the Under Secretary of the Treasury.
Under this arrangement, the escrow agreement dated August 29, 1946, will remain in full force and effect except that the amount payable per month, under paragraph VI, both by the corporations and by Henry Lustig, will be $75,000, if the initial payment of $1,000,000 is made. The amount of $50,000 due on November 1,1946, from the corporations, under that paragraph, may be regarded as a part of the $1,000,000 initial payment.
For Henry Lustig the total of deficiencies in tax and penalties shown in the closing agreement was $808,326.77, made up as follows:

Agreed amount of deficiency including penalty

1941_ $9,857.76
1943- 266, 783.30
1944_ 531, 685. 71
The total amount of deficiency including penalty agreed upon for the various corporations was $4,958,894.18, making a grand total for Mr. Lustig and the corporations of $5,767,-220.95. A total sum of $2,590,878.00 had been paid on the liability of the taxpayers prior to September 27, 1946. Of this amount, none had been paid on the liability of Henry Lustig individually, all of it having been applied to the deficiencies of the various corporations. The agreement provided that this sum would be set off against the agreed deficiencies, leaving a total balance due of tax and penalty exclusive of interest of $3,176,342.95. Of this amount, $808,326.77 was attributable to Henry Lustig individually as shown above, and $2,368,016.18 to the various corporations.
It is concluded that it was the understanding of all the parties that the deficiencies in taxes and penalties agreed upon in the 1946 closing agreement represented the correct *363 amount of such deficiencies and penalties attributable to each of the taxpayers for the years in question.
9. By letter dated September 30, 1946, plaintiff was given statutory notice by the Commissioner of Internal Revenue that determination of his income tax liability for the years 1941,1943, and 1944 disclosed a deficiency in tax of $538,722.71 and of penalty under section 293 (b) of the Internal Revenue Code in the amount of $269,604.06 or a total deficiency of $808,326.77. The amounts shown on this statutory notice of deficiency were identical with those shown on' exhibit A attached to the document dated September 27, 1946, quoted in finding 8 hereof.
10. With a letter dated October 28, 1946, Mr. Zimet, taxpayer’s representative, transmitted a check in the amount of $17,546.99 to the collector of internal revenue and requested that it be applied first to the payment of the obligation of Mr. Lustig for interest for the year 1941, then to the tax and penalties assessed for that year, then to delinquent interest in the account for that year, with the remainder to be applied to the obligation of Mr. Lustig for interest for the year 1943. In accordance with this request, there was credited by the collector of internal revenue $11,615.50 to Mr. Lustig’s account for the year 1941 and $5,775.24 to his account for the year 1943.[1] With a letter dated December 2, 1946, there was transmitted to the collector of internal revenue a check in the amount of $95,000 with a request that it be applied first to interest assessed against Mr. Lustig for the year 1943 and that the remainder be applied to the payment of the tax and penalties assessed for that year. Of these payments, $1,757.74 was applied against interest for the year 1941 and $25,386.79 was applied against interest for the year 1943, for a total of $27,144.53 credited against interest. In connection with these payments Mr. Lustig claimed and was allowed in his 1946 income tax return an interest deduction in the amount of $27,144.53.
11. On the April 1947, special No. 11 assessment list the Commissioner of Internal Revenue assessed against Henry *364 Lustig individually a deficiency in Mr. Lustig’s individual income tax for the year 1945 of $41,494.31 and interest thereon of $2,694.29, for a total of $44,188.60. Gn this same assessment list there were assessed deficiencies in tax and interest totalling $154,123.91 against the various Lustig corporations^ By letter dated April 28,1947 Mr. Lustig was given a statutory notice with regard to the determination of the deficiency for the year 1945 theretofore assessed by jeopardy assessment.
12. On the April 10,1947, special No. 7 assessment list there was assessed telegraphically against Mr. Lustig individually the sum of $4,958,894.18 and against his various corporations in the total amount of $34,413,652.47. These assessments were made under the provisions of the September 27, 1946 agreement making the liability of Mr. Lustig individually and that of his various corporations joint and several for the entire tax liability of all the taxpayers. Thus there wag assessed against each taxpayer not only the deficiency determined with regard to him or it but also the deficiencies for each and every other taxpayer.
It was clearly understood, however, that payment by one individual or corporation on its separate liability under the 1946 closing agreement would serve, pro-tanto, to reduce the amount owed jointly thereunder by each of the others. ■ •
13. In addition to the deficiency assessed for the year 1945 a deficiency against Mr. Lustig individually was proposed in a revenue agent’s report, dated June 9, 1947, covering Mr. Lustig’s year 1946 in tax and penalty in the total amount of $6,206.01. This amount was not ever formally assessed:
14. In February of 1947 the Longchamps Chain of restaurants lost their liquor licenses. As a result of the loss of the licenses, taxpayers’ representatives were fearful that the income from the business would lessen materially and that the business might not thereafter operate profitably. Taxpayers? representative was trying to find a buyer for the Longchamps Chain’ of restaurants during this period of time, and to facilitate a sale, he proposed to the Commissioner of Internal Bevenue that another closing agreement be entered into by which a payment could be. made in complete satisfaction of *365 all .outstanding liabilities of the taxpayers. By an agreement of .sale, dated June 30, 1947, between Henry Lustig and the -Fornow Corporation, as amended by an agreement dated July 7, 1947, Mr. Lustig sold to the Fornow Corporation the total issued and outstanding shares of Henry Lustig Co., Inc. Henry Lustig Co., Inc. owned all the stock of Restaurant & Patisseries Longchamps Inc., and all the stock of the other corporate taxpayers was owned by Restaurant & Patisseries Longchamps Inc.
15. On August 7,1947 the Commissioner of Internal Revenue entered into an agreement with the Fornow Corporation and Henry Lustig and his various corporations under which the Government agreed to close all the liabilities for income, declared value excess profits, excess profits taxes, and personal holding company surtaxes together with penalties and interest, of all the corporate taxpayers for all periods prior to July 1, 1947, and for Henry Lustig individually for all periods prior to January 1, 1947, for the payment to it of $3,000,000 in cash and the delivery of four notes of the For-now Corporation in the amount of $50,000 each, which notes were to mature annually, the first to mature in July of 1948. A photostatic copy of this agreement is in evidence as plaintiff’s exhibit 36. The $3,000,000 in cash was to be paid, and the $200,000 in notes was to be delivered, to the Government by the Fornow Corporation for and on behalf of Mr. Lustig and the corporate taxpayers, pursuant to the agreement of sale between Mr. Lustig and the Fornow Corporation referred to in finding 14 above. The August 7, 1947, closing agreement did not specify how the payments to be made under it were to be allocated as among the accounts of the various taxpayers. The closing agreement provided, in sub-paragraph (1), that: “Each and all of the taxpayers waive all rights to contest any part of any such taxes, penalties, and interest; any rights to any and all refunds for all periods prior to July 1, 1947; and all rights to any carrybacks or carryovers with respect to any period prior to July 1,1947.” A check of the Chase National Bank for the City of New York for $3,000,000, dated August 7, 1947, was delivered to the Director of Internal Revenue and the $200,000 balance *366 represented by the four notes of the Fornow Corporation was assessed against the Fornow Corporation. On July 2, 1948, $50,000 thereof was paid by the Fornow Corporation and the balance of $150,000 on June 7,1949.
16. In connection with the claim for refund of 1947 income tax filed by Mr. Lustig, an agent of the Internal Eevenue Service prepared a summary of the liabilities of Mr. Lustig and the corporate taxpayers as of the date the August 7,1947, closing agreement was executed, from the records in the possession of the Internal Eevenue Service. That summary is as follows:

*367

*368 Of the grand total of $838,317.14, shown in column 9 above as owed by Mr. Lustig, $770,780.88 represented deficiencies in tas and penalties and $67,537.26 represented interest.
In the preparation of the above-tabulated summary, the starting figures were the liabilities for taxes and penalties for the years 1941, 1943 and 1944, as fixed by the closing agreement of September 27,1946, to which was added interest due to the date of payment on the amount of liability for taxes and penalties. As to Henry Lustig, the summary also includes his tax liability for the year 1945, which had not been fixed by the 1946 closing agreement. In column 7 above is shown the amount of the proposed assessment of tax and penalty against Henry Lustig for the year 1946, as contained in the internal revenue agent’s report, which amount had never been assessed. The amounts entered in column 7 of the summary with respect to the other taxpayers likewise shows amounts of tax liability proposed (never assessed) in the internal revenue agent’s report on returns filed for the calendar year 1946 or corresponding fiscal year. There were no tax returns due at the time of the closing agreement August 7, 1947. The last returns filed were Henry Lustig for calendar year 1946; Henry Lustig, Inc/for calendar year 1946; Kestaurant — Patisseries Longchamps, Inc., for calendar year 1946; Fifth Empire Co., Inc., for fiscal year ended November 30, 1946; Lexington Longchamps, Inc., for fiscal year ended January 31, 1947; and 253 Broadway Corporation for fiscal year ended June 30, 1946. The period covered by the last returns of the other corporations is not shown in the record. By the 1947 closing agreement, the annual accounting periods of the corporate taxpayers were changed to fiscal years beginning July 1,1947. No information was available or used in the preparation of the above-tabulated summary with respect to any income or loss received or incurred by any of the taxpayers in the period from the end of the tax year covered by the last return and the date of the August 1947 closing agreement. The summary, however, contains assessments on the taxpayers for 1945 or corresponding fiscal year, as well as the above-tabulated taxes and penalties proposed but not assessed for 1946 or corresponding fiscal year.
*369 17. It was anticipated by all concerned that the corporate taxpayers would operate at a substantial loss after losing their liquor licenses in February of 1947. The taxpayers’ representative in the negotiations resulting in the August 7, 1947, closing agreement, Mr. Zimet, was of the view that these operating losses would be sufficient to offset all liability for taxes owed by the corporations except for those owed under the 1946 closing agreement and that, consequently, no more than $3,000,000 would be due from all the taxpayers for the period covered by the August 7, 1947, closing agreement after the expected operating losses of the corporations were taken into account. This view was communicated to the representatives of the then Internal Revenue Bureau during the negotiations resulting in the August 7,1947, closing agreement, and the prospect of operating losses by the corporate taxpayers due to loss of their liquor licenses was taken into account by the parties in reaching the August 7, 1947, closing agreement. A tentative agreement fixing the total liability of the taxpayers and the amount to be paid by them at $3,000,000 was reached, but, at the insistence of Mr. Oliphant, then Assistant General Counsel to the Secretary of the Treasury, this amount was raised to the $3,200,000 finally agreed upon as representing the entire liability of all the taxpayers and as the amount to be paid under the August 7,1947, closing agreement.
18. In July of 1951 the Deputy Commissioner of Internal Revenue instructed the collector of internal revenue in New York to allocate the amounts paid in settlement as follows:

*370 Tbe balance outstanding attributed to each taxpayer includes not only the separate liability of such taxpayer for deficiencies in its taxes, and penalties and interest thereon, but also the joint and several liability asséssed against each such taxpayer for the entire amount owing by all the taxpayers for 1940-1944 taxes, penalties, and interest under the 1946 closing agreement, referred to in findings 8 and 12 herein. The Deputy Commissioner allocated among the taxpayers' only the'$3,000,000 paid in cash in 1947 pursuant to the 1947 closing agreement referred to in finding 15 above, and did not allocate the additional $200,000 received in notes of the Fornow Corporation.
CONCLUSION OK LAW
Upon the foregoing special findings of fact, which are made a part of .the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover with interest as provided, by law, and judgment is entered accordingly.
The determination of the amount of recovery shall await the.filing of a stipulation by the parties showing the amount due in accordance with the findings and the opinion of the court.
In accordance with the opinion of the court and on the filing- of a stipulation by the parties showing the amount due plaintiff, it was ordered June 5, 1956, that judgment be entered for the plaintiff for $24,387.85, together with interest as provided by law on $20,221.96 from March 15,1948, and on $4,165.89 from April 7,1952.

“Sec. 23. Deductions From Gross Income.
In computing net income there shall be allowed as deductions:
******
(b) Interest. — All Interest paid or accrued within the taxable year on indebtedness, * *

 These sums total $17,390.74 rather than the $17,546.99 paid. Apparently, the balance of $156.25 was never accredited to Mr. Eustig’s account.